# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| **SCOTTISH HOLDINGS, INC.,** *et al.*, | Case No. 18-10160 (LSS) |
| Debtors.[1] | Jointly Administered |
| | Re: D.I. 27 |

## ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH AN AUCTION FOR PLAN SPONSORSHIP OR OTHER ALTERNATIVE TRANSACTION; (B) APPROVING CERTAIN STALKING HORSE PROTECTIONS; AND (C) AUTHORIZING AND SCHEDULING A DATE AND TIME FOR AN AUCTION PURSUANT TO SUCH PROCEDURES

Upon the *Motion of the Debtors for Entry of Order (A) Approving Bidding Procedures in Connection with an Auction for Plan Sponsorship; (B) Approving Certain Stalking Horse Protections; and (C) Authorizing and Scheduling a Date and Time for an Auction Pursuant to Such Procedures* (the "Motion");[2] and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter an order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

IT IS HEREBY FURTHER FOUND AND DETERMINED THAT:

---

[1] The Debtors, along with the last four digits of their federal tax identification numbers, are as follows: Scottish Holdings, Inc. (4408) and Scottish Annuity & Life Insurance Company (Cayman) Ltd. (3285). The Debtors' mailing address for purposes of these chapter 11 cases is 14120 Ballantyne Corporate Place, Suite 300, Charlotte, NC 28277.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

A. Under the circumstances, due, proper, requisite, and sufficient notice of the Motion was provided, and no other or further notice need be provided, except as set forth herein.

B. A reasonable opportunity to be heard regarding the relief provided herein has been afforded to all interested parties.

C. HSCM Bermuda Fund Ltd. ("HSCM") under the Stalking Horse SPA is the "Stalking Horse," and the Stalking Horse SPA reflects the "stalking horse" bid (the "Stalking Horse Transaction"), for purposes of the Bid Procedures.

D. The Debtors have demonstrated that, under the circumstances of these Chapter 11 Cases, the Bidding Procedures attached as **Annex 1** hereto, (a) are fair, reasonable, and provide an appropriate process and timetable for the Debtors to utilize for the solicitation and consideration of competing offers for (i) an alternative transaction to purchase all of the new capital stock (the "Shares") of reorganized Scottish Annuity & Life Insurance Company (Cayman) Ltd ("SALIC") to be issued and transferred under a plan or plans of reorganization for SALIC and SHI (the "Plan") for which the offeror shall serve as the Plan sponsor (a "Share Sale Plan Transaction") and/or (ii) any other Alternative Transactions (as defined in the Stalking Horse SPA), including any transactions to acquire, purchase, finance, restructure or reorganize all or any part of the business, assets, properties, capital stock or capital stock equivalents of one or both Debtors (any such transaction or transactions, an "Alternative Restructuring Transaction"), (b) are reasonably designed to maximize the value to be obtained from the Stalking Horse Transaction, a Share Sale Plan Transaction or Alternative Restructuring Transaction, (c) will promote the Debtors' efforts to maximize their enterprise value, and (d) are in the best interests of the Debtors' and their estates, creditors, and other stakeholders.

E. The Debtors have demonstrated a compelling and sound business justification for approving payment of the "Break-Up Fee" (as defined in the Stalking Horse SPA) and the "Expense Reimbursement Amount" (as defined in the Stalking Horse SPA, as modified by this Order) under the circumstances of these Chapter 11 Cases. Notwithstanding anything to the contrary in the Motion or the Stalking Horse SPA (including Section 8.3(b) thereof), the aggregate of the Expense Reimbursement Amount and the Break-Up Fee shall not exceed $1,250,000. The Break-Up Fee and Expense Reimbursement Amount are sometimes referred to herein as the "Stalking Horse Protections".

F. The Debtors' granting and payment of the Stalking Horse Protections, both under this Order and upon the conditions set forth in the Stalking Horse SPA and PSA, as modified by this Order: (a) are actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code; (b) are of substantial benefit to the Debtors' estates and creditors and all parties in interest herein; (c) are fair, reasonable, and appropriate, including in light of the size and nature of the proposed transactions, including the sale of the Shares and other components of the Stalking Horse Transaction, and the substantial efforts that have been and will be expended by the Stalking Horse in connection with the Stalking Horse SPA and the Plan; (d) have been negotiated by the parties and their respective advisors at arm's-length and in good faith; and (e) are a material inducement for the Stalking Horse to pursue, and a condition necessary to ensure that the Stalking Horse pursues, the purchase of the Shares and the Stalking Horse Transaction.

G. The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the relief requested in the Motion,

including authorization and approval of (a) the Bidding Procedures and (b) the Stalking Horse Protections, both as modified by this Order.

H.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact in this Order constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. All objections filed, if any, to the Motion or the relief requested herein that have not been withdrawn, waived, settled, resolved or otherwise specifically addressed in this Order, and all reservations of rights included in such objections, are specifically overruled in all respects on the merits.

3. The Debtors are hereby authorized and empowered to take all actions necessary to implement the relief granted in this Order.

### I. Approval of the Bidding Procedures

4. The Bidding Procedures in **Annex 1**, attached hereto and incorporated herein, are hereby approved in their entirety and shall govern all bids and other activities relating to any Share Sale Plan Transaction or any Alternative Restructuring Transaction. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures. The failure to specifically include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

5. As further described in the Bidding Procedures, the deadline for submitting a Qualified Bid (as such term is defined in the Bidding Procedures) shall be **May 17, 2018 at 4:00 p.m.**, prevailing Eastern time (the "Bid Deadline").

6. If one or more Qualified Bids has been submitted for a Share Sale Plan Transaction or Alternative Restructuring Transaction in accordance with the Bidding Procedures, the Debtors will conduct an Auction.

7. The Auction shall be organized and conducted by the Debtors on **May 21, 2018 at 10:00 a.m.**, prevailing Eastern time, at the office of Hogan Lovells US LLP, 875 Third Avenue, New York, NY 10022, or such other location as may be announced prior to the Auction to the Auction Participants. Only the Debtors, the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "Committee"), the Joint Liquidators for SRGL, any party-in-interest, the Stalking Horse, and any other Qualified Bidder, along with their representatives and counsel, may attend the Auction, and only the Stalking Horse and other Qualified Bidders will be entitled to make any Bids at the Auction. Any party in interest wishing to attend the Auction must provide the Debtors with notice of their intent to attend at least three (3) business days prior to the Auction and therein identify all individuals anticipated to be attending the Auction on such party's behalf.

8. Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands, and accepts the Bidding Procedures, and (c) has consented to the core jurisdiction of the Court.

9. The first Qualified Bid at the Auction shall be deemed to have been made by the Initial Highest Bidder in the amount of the Initial Highest Bid. Thereafter, the Auction will

continue in the manner determined by the Debtors after consultation with the Committee; provided, however, (a) additional Bids must be Qualified Bids (except that subsequent Qualified Bids made at the Auction, although received from a Qualified Bidder prior to the Bid Deadline, need not be received by the Bid Deadline) and (b) additional Qualified Bids must be made in higher increments of at least $250,000. Any Qualified Bids by the Stalking Horse during the Auction will be entitled to a credit equal to $1,250,000, the maximum amount of the sum of the Break-Up Fee, and the Expense Reimbursement Amount.

10. The Debtors shall determine based on their business judgment after consultation with the Committee, subject to final determination by the Court, whether a Qualified Bid by a Qualified Bidder at the Auction matches or is higher and better than the prior Qualified Bid. The Debtors, in their sole discretion and based on their business judgment, after consultation with the Committee, shall select the Winning Bid and a Backup Bid (if any) subject only to Court approval and shall file a notice with the Court announcing the Winning Bidder and Backup Bidder and conduct a hearing for approval of same, which hearing may be the Disclosure Statement hearing. If the Stalking Horse is designated by the Debtors as the Winning Bidder the hearing for approval of the Debtors' designation of the Winning Bidder and the Winning Bid shall be held on **May 23, 2018, at 10:00 a.m.**, prevailing Eastern time, or such later date as the Debtors and the Stalking Horse may agree. If a Qualified Bidder, other than the Stalking Horse is the Winning Bidder, the hearing for approval of the Debtors' designation of the Winning bidder and the Winning Bid shall be held on a date to be determined, which, unless otherwise agreed by the Debtors and the putatively designated Winning Bidder, shall be no earlier than seven (7) days after the date of conclusion of the Auction and no later than twenty-one (21) days after the conclusion of the Auction.

11. The Bidding Procedures, including the Qualified Bid and Qualified Bidder requirements, are not intended to, and do not, foreclose bidders from making and the Debtors from accepting bids for Alternative Restructuring Transactions.

12. Any reference in this Order or the annexed Bidding Procedures to "consultation rights" for the Committee is subject to limitation by the Debtors in their reasonable discretion in order to preserve the integrity of the bidding and auction process contemplated hereby and in order to protect Debtors' confidential information, including, but not limited to, circumstances in which one or more Committee members is or may be a participant in the bidding and auction process (or have a financial interest in such a participant) and is or may be a direct life reinsurance industry competitor of Scottish Re or an affiliate of such a direct competitor. In the event of any dispute between or among the Debtors, the Stalking Horse, the Committee and/or any Committee member as to the extent of the Committee's consultation rights or the implementation of such consultation rights (including the ability of particular Committee members to have access to material non-public information in connection with the bidding and auction process), any of such parties may request on an expedited basis (but with prior written notice to the other parties, which may be by email) direction from the Court relating to the Committee's consultation rights that are in dispute.

## II. Approval of the Stalking Horse Protections

13. The Stalking Horse Protections are hereby approved as modified by this Order.

14. Without limiting the immediately preceding paragraph, and subject to paragraph 15 below, the Debtors may pay the Break-Up Fee and the Expense Reimbursement Amount, as the case may be, without further application to or order from the Court. The Break-Up Fee shall be in an amount equal to 2% of the Purchase Price (as defined in the Stalking Horse SPA); and the Expense Reimbursement Amount shall be in an amount up to $1,250,000, reduced by the

amount, if any, of any Break-Up Fee paid. Notwithstanding the foregoing, the aggregate of the Break-Up Fee and Expense Reimbursement Amount paid to the Stalking Horse shall not exceed $1,250,000. The Break-Up Fee and the Expense Reimbursement Amount shall constitute superpriority administrative expenses of the Debtors with priority over any and all administrative expenses of any kind, including those specified in sections 503(b) and 507(a) of the Bankruptcy Code.

15. With respect to the Expense Reimbursement Amount, the Stalking Horse shall simultaneously deliver a copy of any invoice submitted to the Debtors to the U.S. Trustee and counsel to the Committee (the "Fee Notice"). None of such costs, fees, charges and expenses shall be subject to Court approval or required to be recorded or maintained in accordance with the United States Trustee guidelines relating to compensation and reimbursement of expenses, and no recipient of any such payment shall be required to file any interim or final fee application with the Court. Further, the Stalking Horse may redact the Fee Notice as necessary to protect and preserve any applicable privilege. Subject to the Debtors, the Committee, or counsel for the United States Trustee (the "US Trustee") filing a written objection with this Court to any such fees and expenses within five (5) days after receipt of the Fee Notice, all amounts chargeable to the Debtors under this Section shall constitute valid expenses for purposes of the Expense Reimbursement Amount. To the extent a timely filed objection is filed by the Debtors, any Committee, or the US Trustee, the Debtors (a) shall pay such portion of the fees and expenses to which no objection is interposed and (b) shall pay any remaining fees and expenses as ordered by the Court (or upon withdrawal or resolution of the objection).

16. The Debtors' obligations to pay the Break-Up Fee and the Expense Reimbursement Amount shall survive termination of the Stalking Horse SPA.

17. Except for the Stalking Horse, no other party submitting an offer or a competing Qualified Bid shall be entitled to any expense reimbursement, break-up, termination, or similar fee or payment.

18. The Stalking Horse Protections are necessary to maximize the value of the Debtors' estates. Without the Stalking Horse Protections, the Stalking Horse would not pursue the Stalking Horse Transaction, likely resulting in the Debtors realizing a lower price in any Proposed Transaction (as defined in the Bidding Procedures).

19. As contemplated by section 2.1 of the Stalking Horse SPA, the Deposit Escrow Agent (as defined in the Stalking Horse SPA) shall hold and disburse the Deposit Escrow Amount (as defined in the Stalking Horse SPA) pursuant to the terms of the Deposit Escrow Agreement (as defined in the Stalking Horse SPA).

### III. Approval of the Procedures and Possible Assumption Notices

20. The form of the Procedures Notice attached hereto as **Annex 2** is hereby approved in all respects. All parties in interest shall receive or be deemed to have received good and sufficient notice of the solicitation of offers for Share Sale Plan Transactions, offers for Alternative Restructuring Transactions and the Auction if the Debtors serve the Procedures Notice and this Order by first class mail, postage prepaid, within three (3) business days after entry of this Order upon: (a) counsel for the US Trustee; (b) the Debtors' largest unsecured creditors on a consolidated basis as identified in their chapter 11 petitions; (c) counsel to the Committee; (d) any party that (i) KBW previously contacted on the Debtors' behalf following the commencement of its current investment banking engagement for the Debtors or (ii) has expressed in writing to the Debtors or KBW an interest in pursuing a Share Sale Plan Transaction or Alternative Restructuring Transaction; (e) the Delaware Department of Insurance; (f) counsel to the Joint Liquidators of SRGL; (g) the Delaware Secretary of State; (h)

the Delaware State Treasury; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the Cayman Islands Monetary Authority; (l) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (m) any other party required to be provided notice under Local Rule 9013-1(m).

21. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

22. To the extent that any chapter 11 plan confirmed in these Chapter 11 Cases or any order confirming any such plan or any other order in these Cases (including any order entered after any conversion of these Cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with, or derogates from the provisions of this Bidding Procedures Order, the provisions of this Order shall control. The Debtors' obligations under this Order, the provisions of this Order, and the portions of the PSA and Stalking Horse SPA pertaining to the Stalking Horse Protections shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted Debtors, as the case may be after the effective date of a confirmed plan or plans in the Debtors' cases (including any order entered after any conversion of these Cases to cases under chapter 7 of the Bankruptcy Code).

23. The approval herein of the Stalking Horse Protections shall be binding on all successors and assigns, including any trustee appointed in these Chapter 11 Cases, and on any liquidating or distribution trustee appointed pursuant to the Plan (but, with respect to such trustee, not as a successor to the Debtors).

24. The stay provided for in Bankruptcy Rule 6006(d) is waived and this Order shall be effective immediately upon its entry.

25. The Court shall retain jurisdiction over any matter or disputes arising from or relating to the interpretation, implementation or enforcement of this Order.

Dated: February 28, 2018
Wilmington, Delaware

_____
THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE