**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>SCOTTISH HOLDINGS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-10160 (LSS)<br><br>Jointly Administered<br><br>**Hearing Date:**<br>February 26, 2019 at 11:30 a.m. (ET)<br>**Objections Due:**<br>February 5, 2019 at 4:00 p.m. (ET) |

**DEBTORS' THIRD MOTION FOR ENTRY OF AN ORDER
PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING THE
EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS
MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Scottish Holdings, Inc. ("SHI") and Scottish Annuity & Life Insurance Company (Cayman) Ltd. ("SALIC"), debtors and debtors in possession (together, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby move (this "Motion") for entry of an order, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), further extending the period during which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by 120 days through and including May 23, 2019, and extending the period during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods") through and including July 24, 2019.  This is the

---

[1] The Debtors, along with the last four digits of their federal tax identification numbers, are as follows: Scottish Holdings, Inc. (4408) and Scottish Annuity & Life Insurance Company (Cayman) Ltd. (3285).  The Debtors' mailing address for purposes of these chapter 11 cases is 14120 Ballantyne Corporate Place, Suite 300, Charlotte, NC 28277.

Debtors' third motion to extend the Exclusive Periods. In support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtors consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory basis for the relief requested herein is section 1121(d) of the Bankruptcy Code.

**BACKGROUND**

4. On January 28, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On February 20, 2018, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code (D.I. 81). No trustee or examiner has been requested or appointed in these Chapter 11 Cases.

6. Additional information regarding the Debtors, including their business operations and the events leading to the filing of the Chapter 11 Cases is set forth in detail in the *Declaration of Gregg Klingenberg in Support of First-Day Relief* (D.I. 3), the Disclosure

Statement (as defined below) and the *Declaration of Gregg Klingenberg in Support of Confirmation of the Debtors' Third Amended Plan of Reorganization* (D.I. 453).

7. Just prior to filing their chapter 11 petitions, and following extensive prepetition marketing efforts, the Debtors entered into a stalking horse stock purchase agreement (the "Stalking Horse SPA") with Hudson Structure Capital Management, Ltd. ("Hudson"). The Stalking Horse SPA formed the baseline terms under which the Debtors' businesses would be restructured and recapitalized through a chapter 11 plan, subject to higher and better bids or alternative transactions. By order (D.I. 119) (the "Bidding Procedures Order") entered on February 28, 2018, the Court approved bidding procedures (the "Bidding Procedures") for the purpose of soliciting higher or better offers to serve as plan sponsor or for an alternative transaction that maximizes value.

8. Following the Court's approval of the Bidding Procedures, the Debtors, with the assistance of their investment banker, engaged in a postpetition marketing process that resulted in two Qualified Bids (as defined in the Bidding Procedures Order), comprising of Hudson's stalking horse offer and a competing offer from Hildene Re Holdings, LLC ("Hildene").

9. The Debtors commenced an Auction on May 30, 2018. At the conclusion of the Auction, in consultation with the Committee, the Debtors designated Hildene as the Winning Bidder (Hildene or its designee, in such capacity, the "Purchaser") and Hudson as the Backup Bidder.

10. Following the Auction, the Debtors and the Purchaser entered into the certain Stock Purchase Agreement dated June 11, 2018 (D.I. 342) (as amended, the "Stock Purchase Agreement").

11. On June 12, 2018, the Court entered the *Order: (I) Approving Debtors' Designation of (A) Winning Bid and Winning Bidder and (b) Backup Bid and Backup Bidder; and (II) Granting Related Relief* (D.I. 346) (the "Winning Bidder Order") approving, among other things, the Debtors' designation of the Purchaser as the Winning Bidder and Hudson as the Backup Bidder.

12. On June 29, 2018, at the Debtors' request, the Court entered the *Order: (I) Approving Disclosure Statement; (II) Scheduling Confirmation Hearing and Related Deadlines; (III) Establishing Procedures for Solicitation, Temporary Allowance of Claims and Vote Tabulation; (IV) Approving Form of Ballots; (V) Approving Form, Manner and Sufficiency of Notice of Confirmation Hearing and Related Deadlines; and (VI) Granting Related Relief* (D.I. 380) (the "Disclosure Statement Order"), which established, among other things, procedures for soliciting votes to accept or reject the Plan (as defined below).

13. On June 29, 2018, the Debtors filed the solicitation versions of the *Second Amended Joint Chapter 11 Plan of Reorganization of Scottish Holdings, Inc., and Scottish Annuity & Life Insurance Company (Cayman) Ltd.* (D.I. 381) (the "Second Amended Plan") and the *[Proposed] Disclosure Statement for Second Amended Joint Chapter 11 Plan of Reorganization of Scottish Holdings, Inc., and Scottish Annuity & Life Insurance Company (Cayman) Ltd.* (D.I. 382) (together with all exhibits and schedules thereto, the "Disclosure Statement").

14. With the assistance of their Court-appointed voting agent, Prime Clerk LLC, the Debtors completed distribution of the Court-approved solicitation materials, consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, on July 3, 2018, as described in the *Affidavit of Service of Solicitation Materials* (D.I. 395).

15. On August 9, 2018, the Debtors filed the *Third Amended Chapter 11 Plan of Reorganization of Scottish Holdings, Inc., and Scottish Annuity & Life Insurance Company (Cayman) Ltd.* (D.I. 437, Ex. A) (as it may be altered, amended, modified or supplemented from time to time in accordance with its terms and together with the Stock Purchase Agreement and the Plan Supplement, the "Plan"). The modifications made to the Second Amended Plan, as set forth in the Plan and redline thereof filed with the Court, were technical and non-material as to creditors and other parties in interest that did not affirmatively consent to such modifications.

16. The Court held a hearing to consider confirmation of the Plan on August 22, 2018 (the "Confirmation Hearing"). All classes of claims entitled to vote on the Plan unanimously accepted the Plan, no party opposed confirmation of the Plan, and all informal or formal objections or comments to the Plan or proposed form of confirmation order were resolved consensually in advance of the Confirmation Hearing. Accordingly, at the Confirmation Hearing, the Court found that the Plan met all of the applicable requirements for confirmation, and the Court ruled that it would confirm the Plan.

17. On August 27, 2018 (the "Confirmation Date"), the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Third Amended Joint Chapter 11 Plan of Reorganization of Scottish Holdings, Inc., and Scottish Annuity & Life Insurance Company (Cayman) Ltd.* (D.I. 492) (the "Confirmation Order"), confirming the Plan.

18. Because the Debtors and their nondebtor affiliates include regulated reinsurance companies, the transactions contemplated by Stock Purchase Agreement and the Plan are subject to regulatory approval. Recognizing that regulatory approval can take time, the parties in these cases have always understood and expected that there would be a longer-than-usual period between confirmation and the Effective Date of the Plan. Therefore, the Plan itself

contains no outside date for closing of the Stock Purchase Agreement or the Effective Date of the Plan. The Stock Purchase Agreement, however, contains an "Outside Closing Date" of 180 days after entry of the Winning Bidder Order, or December 9, 2018—which represented a period the parties believed at the time to be sufficient to obtain the necessary regulatory approvals and close under the Stock Purchase Agreement.

19. For the reasons discussed on the record at the status conference held in these cases on December 20, 2018, the Stock Purchase Agreement did not close on or before December 9, 2018. However, the Stock Purchase Agreement has not been terminated and remains in effect, and, the Debtors and Hildene continue to work on meeting the closing conditions under the Stock Purchase Agreement as well as on amending the Stock Purchase Agreement to, among other things, extend the Outside Closing Date.

20. The Debtors are seeking an extension of the Exclusive Periods to: (i) accommodate such ongoing discussions and a later closing date under the Stock Purchase Agreement (and thus Effective Date under the Plan), or, in the event that the Stock Purchase Agreement does not close, (ii) to permit the Debtors sufficient time to pursue a new or amended plan, which would avoid liquidating the Debtors under chapter 7 while maintaining and maximizing the ability to make a distribution to their creditors above what would be available in a liquidation.

21. The Debtors' current Exclusive Filing Period and Exclusive Solicitation Period expire on January 23, 2019, and March 26, 2019, respectively.

**RELIEF REQUESTED**

22. By this Motion, the Debtors seek the entry of an order pursuant to section 1121(d) of the Bankruptcy Code extending (a) the Exclusive Filing Period through and including

May 23, 2019, and (b) the Exclusive Solicitation Period through and including July 24, 2019, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

## BASIS FOR RELIEF REQUESTED

23.     Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a plan.  Section 1121(c)(3) of the Bankruptcy Code provides that if the debtor proposes and files a plan within the initial 120-day exclusive period, the debtor then has until 180 days after the commencement of the chapter 11 case to solicit and obtain acceptances of such plan.  Pursuant to section 1121(d)(1) of the Bankruptcy Code, "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1).[2]

24.     Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement" with its creditors.  H.R. Rep. No. 595, 95th Cong., 1st Sess. 232 (1977); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987); *In re Public Serv. Co. of N.H.*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent . . . [is] to promote maximum flexibility.").  To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for

---

[2]   Such extensions are capped by section 1121(d)(2) of the Bankruptcy Code, which limits any extension of the exclusive filing period to eighteen (18) months after the petition date and any extension of the solicitation period to twenty (20) months after the petition date.

disclosure to creditors. *See, e.g.*, *McLean*, 87 B.R. at 833–34; *In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

25. The decision to extend a debtor's exclusive periods is committed to the bankruptcy court's sound discretion, guided by the facts and circumstances of each case. *See, e.g.*, *First Am. Bank of N.Y. v. S.W. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986). Courts consider a variety of factors in determining whether "cause" exists to warrant an extension of the exclusive periods, including: (a) the size and complexity of the case; (b) the debtor's progress in resolving issues facing the estate; and (c) whether an extension of time will harm the debtor's creditors. *See, e.g., In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409–10 (E.D.N.Y. 1989) (listing factors); *In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997) (citing *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996)). The existence of good faith progress and the need for additional time to continue such progress are particularly significant factors that establish cause for extending the exclusive periods under section 1121(d) of the Bankruptcy Code. *See Express One Int'l, Inc.*, 194 B.R. at 101; *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986).

26. Cause exists to further extend the Exclusive Periods in these Chapter 11 Cases for several reasons. First, these Chapter 11 Cases are large and complex. The Debtors and their non-debtor affiliates are a complex, multi-national onshore-offshore reinsurance enterprise subject to regulation in the United States, the Cayman Islands, Ireland, and Bermuda. The Debtors and their non-debtor affiliates collectively manage billions of dollars in assets and liabilities in connection with their reinsurance business, and are parties to approximately 1,000 reinsurance treaties. Additionally, these Chapter 11 Cases involve the unprecedented

restructuring in chapter 11 of an operating insurance company.[3]  Accordingly, it is beyond dispute that these Chapter 11 Cases are large and complex.

27.  Second, the Debtors have continuously and effectively resolved issues facing the estates and have now advanced these Chapter 11 Cases to confirmation of a fully consensual Plan.  Through significant effort and negotiations with parties in interest, the Debtors have been able to successfully resolve myriad issues with the Committee, creditors, the U.S. Trustee, the Purchaser, and other parties in interest.  As a result, the Debtors and parties in interest have yet to call upon the Court to rule on any contested matter.[4]  The Debtors' dedication to working cooperatively and collaboratively with parties in interest continued in drafting and revising the Plan, and resulted in a Plan that was unopposed and accepted unanimously by all voting creditors.[5]

28.  The Debtors and their professionals have specifically devoted substantial time and effort to interfacing with the Committee and its professionals, both as a general matter and to address specific issues raised by the Committee and its professionals.  These efforts resulted in the Committee's support of the Plan. Confirmation Hr'g Tr. 34:4–16 ("All of [the Committee's] issues have been resolved in a positive manner to benefit both the estate and the

---

[3]  The Bankruptcy Code generally prohibits insurance or reinsurance companies from seeking bankruptcy relief if they engage in such business in the United States.  *See* 11 U.S.C. § 109(b). SALIC, however, is the rare insurance or reinsurance company not subject to this prohibition because it is a foreign reinsurance company not engaged in such business in the United States. *See id.*

[4]  Even the one contested matter presented to the Court—the terms of the retention of the Debtors' investment banker—was resolved before the Court was required to rule on the matter.

[5]  For voting details see the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Joint Chapter 11 Plan of Reorganization of Scottish Holdings, Inc., and Scottish Annuity & Life Insurance Company (Cayman) Ltd.* (D.I. 452).

creditors of the debtors. So, we are very pleased with the outcome and we support the confirmation process today.").

29. Additionally, the Debtors have devoted significant time and effort to engaging with the Court-appointed liquidators and receiver of their non-debtor affiliates in the Cayman Islands, Bermuda, and Luxembourg. Specifically, the Debtors have engaged with the joint liquidators appointed in non-debtor affiliate Scottish Re Group Limited's ("SRGL") winding up proceedings in the Caymans Islands and Bermuda, resulting in SRGL, in its role as a TruPS Holder, voting to accept the Plan. The Debtors also have engaged with the Luxembourg insolvency receiver, Max Mailliet, of non-debtor affiliate Scottish Financial (Luxembourg) S.á r.l. ("SFL"). The Debtors' negotiations with Mr. Mailliet resulted in a stipulation between the Debtors and SFL, which, among other things, confirmed that SFL was deemed to vote in acceptance of the Plan and Mr. Mailliet, on behalf of SFL and himself, had no objections to the Plan. The Court entered an order granting the stipulation between the Debtors and SFL on August 22, 2018 (D.I. 471).

30. The Debtors also have continued significant engagement with their regulators, including the Delaware Department of Insurance, the Cayman Islands Monetary Authority, the Bermuda Monetary Authority, and the Central Bank of Ireland. The Debtors have held several in-person meetings with regulators and assisted the Purchaser with addressing the Delaware DOI's questions in relation to closing issues under the Stock Purchase Agreement. The Debtors continue to engage with their regulators to the extent necessary to obtain regulatory approval of the Stock Purchase Agreement.

31. Additionally, since confirmation of the Plan, the Debtors have continued to keep key parties in interest apprised of the status regarding the closing of the Stock Purchase

Agreement and the effectiveness of the Plan. For example, the Debtors requested the Court status conference and presented the status report in Court on December 20, 2018, so as to continue to keep the Court and parties in interest apprised of developments and explain the status of closing. As the Debtors continue to work toward closing the Stock Purchase Agreement and effectuating the Plan, the Debtors have provided regular updates to parties in interest, including the Committee, and will continue to do so.

32. The Debtors submit that, on this record, it is undeniable they have made good faith progress in these Chapter 11 Cases.

33. Third, allowing additional time will not harm the Debtors' creditors. The Debtors intend to use the additional time provided by this extension, in the first instance, to continue to pursue consummation of the Plan, which was accepted unanimously by creditors and currently represents the best available alternative and highest recovery for creditors. In the event the Plan cannot be consummated, then the Debtors intend to use the additional time under the Exclusive Periods to pursue a new or amended plan, which would avoid liquidating the Debtors under chapter 7 while maintaining and maximizing the ability to make a distribution to their creditors above what would be available in a liquidation. In short, extending the Exclusive Periods will enable the Debtors to continue to pursue the best available alternative to maximizing creditor returns, whether it be the current Plan or a new or amended plan. Furthermore, as discussed above, the Debtors have kept key parties in interest, including the Committee, apprised of developments, as well as sought the input of parties, and the Debtors intend and expect to continue to do so with respect to consummating the Plan or pursuing a new or amended plan, as the case may be. Accordingly, the Debtors submit that an extension will not prejudice creditors.

34. This is the Debtors' third motion to extend the Exclusive Periods, and the Debtors' requested extension of the Exclusive Periods does not exceed the eighteen (18) month limitation for the exclusive period to file a plan or the twenty (20) month limitation for the exclusive period to solicit acceptances of a plan.

35. For all of the foregoing reasons, the Debtors submit that sufficient cause exists to extend the Exclusive Filing Period through and including May 23, 2019, and the Exclusive Solicitation Period through and including July 24, 2019.

### Automatic Extension under Local Rule 9006-2

36. Pursuant to Local Rule 9006-2, the Exclusive Periods shall automatically be extended until the Court acts on this Motion, without the necessity for the entry of a bridge order.

### NOTICE

37. Notice of this Motion has been provided to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Committee; (c) counsel for the Purchaser; and (d) all parties entitled to receive notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request the entry of an Order, in substantially the form attached hereto as **Exhibit A**, authorizing the further extension of the Exclusive Periods and granting such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: January 22, 2019<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/     Paige N. Topper*<br>Eric D. Schwartz (No. 3134)<br>Gregory W. Werkheiser (No. 3553)<br>Matthew B. Harvey (No. 5186)<br>Paige N. Topper (No. 6470)<br>1201 N. Market St., 16th Floor<br>PO Box 1347<br>Wilmington, DE  19899-1347<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>eschwartz@mnat.com<br>gwerkheiser@mnat.com<br>mharvey@mnat.com<br>ptopper@mnat.com<br><br>- and –<br><br>Peter Ivanick<br>Lynn W. Holbert<br>John D. Beck<br>HOGAN LOVELLS US LLP<br>875 Third Avenue<br>New York, NY 10022<br>Telephone: (212) 918-3000<br>Facsimile: (212) 918-3100<br>peter.ivanick@hoganlovells.com<br>lynn.holbert@hoganlovells.com<br>john.beck@hoganlovells.com<br><br>*Counsel for Debtors and Debtors in Possession* |