**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| SCOTTISH HOLDINGS, INC., *et al.*, | Case No. 18-10160 (LSS) |
| Debtors.[1] | Jointly Administered |
| | **Requested Hearing Date: February 26, 2019, at 11:30 a.m. ET** **Requested Objection Deadline: At or before the Hearing** |

**DEBTORS' *EMERGENCY* MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 (I) APPROVING PROPOSED FORM OF EXCLUSIVITY LETTER WITH HUDSON STRUCTURED CAPITAL MANAGEMENT LTD., (II) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER SUCH AN EXCLUSIVITY LETTER, AND (III) GRANTING RELATED RELIEF**

Scottish Holdings, Inc. ("SHI") and Scottish Annuity & Life Insurance Company (Cayman) Ltd. ("SALIC"), debtors and debtors in possession (together, the "Debtors") in the above-captioned chapter 11 cases, hereby move (this "Motion"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order, substantially in the form attached as **Exhibit A**, granting the following relief: (i) approving the proposed form of a letter agreement with Hudson Structured Capital Management Ltd. ("Hudson"), in substantially the form attached hereto as **Exhibit B** (as such form of letter agreement may be further revised prior to the hearing on this Motion, the "Exclusivity Letter");[2]

---

[1] The Debtors, along with the last four digits of their federal tax identification numbers, are as follows: Scottish Holdings, Inc. (4408) and Scottish Annuity & Life Insurance Company (Cayman) Ltd. (3285). The Debtors' mailing address for purposes of these chapter 11 cases is 11006 Rushmore Drive, Suite 125, Charlotte, North Carolina 28277.

[2] At this time the Debtors are seeking approval of the Exclusivity Letter in substantially the form attached Exhibit B to the Motion as such form may be further revised prior to the hearing on the Motion because the Exclusivity Letter remains the subject of ongoing discussions among the Debtors, Hudson and the

(ii) authorizing the Debtors to execute and perform under the Exclusivity Letter; and (iii) granting related relief.

In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtors consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code.

## BACKGROUND

4. On January 28, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On February 20, 2018, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code (D.I. 81). No trustee or examiner has been requested or appointed in these chapter 11 cases.

---

Committee. For the avoidance of doubt, the Debtors acknowledge that the Debtors' filing of this Motion does not obligate Hudson to execute the Exclusivity Letter, nor does it impose any legal or other obligations or liabilities on Hudson. Debtors acknowledge further that Hudson reserves complete discretion as to whether it will execute the Exclusivity Letter or proceed with an Alternative Proposal (as defined in the Exclusivity Letter).

6. Additional information regarding the Debtors, including their business operations and the events leading to the filing of the Chapter 11 Cases is set forth in detail in the *Declaration of Gregg Klingenberg in Support of First-Day Relief* (D.I. 3), the Disclosure Statement (as defined below) and the *Declaration of Gregg Klingenberg in Support of Confirmation of the Debtors' Third Amended Plan of Reorganization* (D.I. 453).

7. Just prior to filing their chapter 11 petitions, and following extensive prepetition marketing efforts, the Debtors entered into a stalking horse stock purchase agreement (the "Stalking Horse SPA") with Hudson Structured Capital Management, Ltd. ("Hudson"). The Stalking Horse SPA formed the baseline terms under which the Debtors' businesses would be restructured and recapitalized through a chapter 11 plan, subject to higher and better bids or alternative transactions. By order (D.I. 119) (the "Bidding Procedures Order") entered on February 28, 2018, the Court approved bidding procedures (the "Bidding Procedures") for the purpose of soliciting higher or better offers to serve as plan sponsor or for an alternative transaction that maximizes value.

8. Following the Court's approval of the Bidding Procedures, the Debtors, with the assistance of their investment banker, engaged in a postpetition marketing process that resulted in two Qualified Bids (as defined in the Bidding Procedures Order), comprising of Hudson's stalking horse offer and a competing offer from Hildene Re Holdings, LLC ("Hildene").

9. The Debtors commenced an Auction on May 30, 2018. At the conclusion of the Auction, in consultation with the Committee, the Debtors designated Hildene as the

Winning Bidder (Hildene or its designee, in such capacity, the "Purchaser") and Hudson as the Backup Bidder.[3]

10. Following the Auction, the Debtors and the Purchaser entered into the certain Stock Purchase Agreement dated June 11, 2018 (D.I. 342) (as amended, the "Stock Purchase Agreement").

11. On June 12, 2018, the Court entered the *Order: (I) Approving Debtors' Designation of (A) Winning Bid and Winning Bidder and (b) Backup Bid and Backup Bidder; and (II) Granting Related Relief* (D.I. 346) (the "Winning Bidder Order") approving, among other things, the Debtors' designation of the Purchaser as the Winning Bidder and Hudson as the Backup Bidder.

12. On June 29, 2018, at the Debtors' request, the Court entered the *Order: (I) Approving Disclosure Statement; (II) Scheduling Confirmation Hearing and Related Deadlines; (III) Establishing Procedures for Solicitation, Temporary Allowance of Claims and Vote Tabulation; (IV) Approving Form of Ballots; (V) Approving Form, Manner and Sufficiency of Notice of Confirmation Hearing and Related Deadlines; and (VI) Granting Related Relief* (D.I. 380) (the "Disclosure Statement Order"), which established, among other things, procedures for soliciting votes to accept or reject the Plan (as defined below) and approved the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Reorganization of Scottish Holdings, Inc., and Scottish Annuity & Life Insurance Company (Cayman) Ltd.* (D.I. 382) (together with all exhibits and schedules thereto, the "Disclosure Statement").

13. On August 9, 2018, the Debtors filed the *Third Amended Chapter 11 Plan of Reorganization of Scottish Holdings, Inc., and Scottish Annuity & Life Insurance Company (Cayman) Ltd.* (D.I. 437, Ex. A) (as it may be altered, amended, modified or supplemented from

---

3 Hudson's obligations as Backup Bidder ended on August 20, 2018.

time to time in accordance with its terms and together with the Stock Purchase Agreement and the Plan Supplement, the "Plan").

14. The Court held a hearing to consider confirmation of the Plan on August 22, 2018 (the "Confirmation Hearing"), and at the Confirmation Hearing, the Court found that the Plan met all of the applicable requirements for confirmation, and the Court ruled that it would confirm the Plan.

15. On August 27, 2018 (the "Confirmation Date"), the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Third Amended Joint Chapter 11 Plan of Reorganization of Scottish Holdings, Inc., and Scottish Annuity & Life Insurance Company (Cayman) Ltd.* (D.I. 492) (the "Confirmation Order"), confirming the Plan.

16. The Stock Purchase Agreement contained an "Outside Closing Date" of December 9, 2018, for closing the transactions thereunder and thus the transactions contemplated by the Plan. Although the Debtors and the Purchaser worked diligently to close the Stock Purchase Agreement in advance of the Outside Closing Date, for the reasons discussed on the record at the status conference held in these cases on December 20, 2018, the Stock Purchase Agreement did not close on or before December 9, 2018.

17. In particular, the inability to close by December 9 was primarily due to: (1) certain of the necessary regulatory approvals from the Delaware Department of Insurance (the "Department") remaining pending and (2) the Debtors' non-debtor subsidiary, Scottish Re (U.S.), Inc. ("SRUS"), was experiencing adverse financial results due to unprecedented levels of current and projected future adverse mortality experience predominantly in respect to the business ceded to SRUS by a particular third-party ceding company ("Cedent One"). Furthermore, because SALIC reinsures a significant portion of SRUS's business, the continued

levels of actual and projected increased adverse mortality experience not only negatively impacted capital and surplus at SRUS, but also increased the strain on liquidity at SALIC. Therefore, absent a significant modification of the economics associated with Cedent One's business, the funding required of Purchaser at closing and in the future would have been prohibitively high, and the Stock Purchase Agreement would not close. Thus, as the parties' indicated at the December 20 status conference, the Debtors and the Purchaser continued to work toward a resolution of the issues created by Cedent One's business.

18. On January 4, 2019, Hudson filed a motion seeking enforcement of the stalking horse protections and directing the Debtors to pay the Expense Reimbursement Amount (D.I. 649) (the "Hudson Motion"). In response, the Debtors and the Committee filed objections to the Hudson Motion (D.I. 660 & 662).

19. On January 25, 2019, the Court held an *in camera* status conference at the Debtors' request to allow the Debtors to provide a further status update on the closing of the Stock Purchase Agreement in a confidential setting due to the sensitive nature of ongoing negotiations. At that conference, the Debtors informed the Court that they had reached an agreement in principle with Cedent One. The Debtors also announced, however, that a new obstacle to closing had emerged: the fourth quarter 2018 financial results of SRUS and the Debtors were far worse than originally expected, and, without renegotiating additional business negatively impacting SRUS and the Debtors, the capital contributions required of the Purchaser at closing and in the future would remain prohibitively high and be subject to an unacceptable level of risk of depletion. As a result, the Purchaser required as a further condition to proceeding with the transaction, at a minimum, that the Debtors favorably resolve the business with another third-party ceding company ("Cedent Two") adversely affecting SRUS's capital and surplus and

SALIC's liquidity. Following the *in camera* conference, the Debtors continued actively negotiating with Cedent Two, the Purchaser, and other parties in interest in an effort to secure a path to closing the Stock Purchase Agreement.

20. Also on January 25, 2019, the Court held a hearing on the Hudson Motion and took the matter under advisement.

21. During the weeks leading up to February 15, 2019, the Debtors engaged in extensive negotiations with Cedent Two in an effort to reach a resolution acceptable to both Cedent Two and the Purchaser. Despite these efforts, on February 15, 2019, Cedent Two delivered to the Debtors a settlement offer in an amount that the Debtors expected would far exceed what the Purchaser would accept. Nevertheless, later that day, the Debtors informed the Purchaser of Cedent Two's position, and requested that the Purchaser inform the Debtors within 24 hours whether, in light of the current inability to reach a resolution with Cedent Two on terms acceptable to the Purchaser, it would continue to pursue closing the Stock Purchase Agreement.

22. On February 16, 2019, the Purchaser informed the Debtors that it would not pursue closing the Stock Purchase Agreement.

23. Accordingly, that same day, the Debtors' boards of directors met and unanimously determined that the Debtors would send a notice of termination of the Stock Purchase Agreement to the Purchaser and thereafter contact Hudson to explore the possibility of reengaging on a transaction. Consistent with this board action, the Debtors sent a notice of termination to the Purchaser on February 16, 2019, and contacted Hudson that evening regarding the potential to negotiate a new transaction.

24. Over the next several days, the Debtors and Hudson engaged in discussions regarding reengaging to pursue a new transaction. Hudson has indicated a

willingness to consider pursuing a new transaction with the Debtors, but only with written and Court approved undertakings by the Debtors in furtherance of such discussions (subject to certain terms and conditions). The specific terms and conditions under which Hudson will re-engage in negotiations about a potential new transaction continue to be the subject of ongoing discussions among the Debtors, Hudson and the Committee, but are expected to include, among other material provisions, the following terms that are contained in the form of Exclusivity Letter attached as Exhibit B to this Motion: (i) Hudson shall receive a satisfactory period of exclusivity; (ii) the Debtors will reimburse Hudson's affiliate, HSCM Bermuda Fund Ltd., up to $125,000 for reasonable and documented out-of-pocket costs, fees and expenses incurred up to the date required by the Exclusivity Letter for Hudson to submit a Binding Commitment (regardless of whether one is actually submitted) in connection with the Proposed Transaction (as such terms are defined in the Exclusivity Letter); and (iii) the Debtors, without further delay, shall pay HSCM Bermuda Fund Ltd. immediately the $1.25 million Expense Reimbursement Amount owed pursuant to Section 8.3 of the Stalking Horse SPA.

25. The Debtors, in their business judgment, believe that meeting such terms and conditions in order to be able to pursue a possible transaction with Hudson is, at this stage, the best and possibly only viable alternative to achieve value for unsecured creditors.

26. As they have done at all stages in these cases, the Debtors have kept key parties in interest—including the Committee, the Department, the joint official liquidators (the "JOLs") of Scottish Re Group Limited, and the insolvency receiver (the "Receiver") of Scottish Financial (Luxembourg) S.á r.l.—apprised of the foregoing developments.

27. Because of the fluidity of the current situation, the Debtors have not yet been able to confirm whether the Committee, the JOLs and/or the Receiver will support or

consent to the relief requested in this Motion. Between now and the hearing on this Motion the Debtors intend to continue their efforts to garner the support and/or consent of their various stakeholders with respect to the relief requested by this Motion. In addition, the Debtors understand that the Department continues to monitor closely these proceedings in connection with its supervision and regulation of SRUS, and the potential exists for additional near term regulatory action in respect of SRUS.

## RELIEF REQUESTED

28. By this Motion, the Debtors seek the entry of an order, in substantially the form attached hereto as **Exhibit A**, granting the following relief: (i) approving the proposed form of the Exclusivity Letter; (ii) authorizing the Debtors to execute and perform under the Exclusivity Letter, as well as making the immediate payment by the Debtors to HSCM Bermuda Fund Ltd., an affiliate of Hudson, of the Expense Reimbursement Amount of $1,250,000 under Section 8.3 of the Stalking Horse SPA; and (iii) granting related relief.

## BASIS FOR RELIEF REQUESTED

29. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Third Circuit have approved a debtor's use of property outside the ordinary course of business when such use has a "sound business purpose" and is proposed in good faith. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Co. (In re Montgomery Ward Holding Co.)*, 242 B.R. 147, 153 (D. Del. 1999).

30. Once a debtor has articulated a valid business purpose, courts consider whether relief is justified under the business judgment rule. *See Montgomery Ward*, 242 B.R. at 153. "The business judgment rule 'is a presumption that in making a business decision the

directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has "vitality" in chapter 11 cases and presumes that a debtor's management decisions are reasonable. *See Integrated Resources*, 147 B.R. at 656; *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

31. Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

32. Although the Debtors vigorously and in good faith pursued solutions to issues facing the Debtors and SRUS to reach closing of the Stock Purchase Agreement, the Debtors ultimately were unable to obtain solutions satisfactory to the Purchaser in the time available to seek to avoid a liquidation of the Debtors and irreversible regulatory action in respect of SRUS. As a result, the Debtors terminated the Stock Purchase Agreement to no longer be bound by the "no shop" provisions therein and to seek a possible alternative transaction that would avoid liquidation and achieve value for unsecured creditors. The Debtors believe that granting exclusivity to Hudson, reimbursing (subject to caps to be agreed upon) reasonable out-of-pocket costs, fees and expenses that have been or may be incurred by HSCM Bermuda Fund Ltd. in accordance with the Exclusivity Letter, and making the payment of the Expense Reimbursement Amount as provided for under Section 8.3 of the Stalking Horse SPA are

necessary actions in order to be able to pursue a possible transaction with Hudson, which is, at this stage, the best and possibly only viable path to avoid liquidation and achieve value for unsecured creditors. Accordingly, the Debtors have determined, in an exercise of their business judgment, that entering into and performing under the Exclusivity Letter are in the best interests of their estates, creditors and parties in interest. The Exclusivity Letter preserves the possibility of a transaction in which the Debtors' unsecured creditors may receive value above what would be available in a chapter 7 liquidation. Therefore, the interests of the Debtors' estates and creditors are best served by approving the Debtors' entry into the Exclusivity Letter.

33. Moreover, approval for the Debtors to pay HSCM Bermuda Fund Ltd. the Expense Reimbursement Amount owed pursuant to Section 8.3 of the Stalking Horse SPA will resolve the Hudson Motion.

34. For these reasons, the Court should authorize the Debtors to enter into and perform under the Exclusivity Letter.

**WAIVER OF BANKRUPTCY RULE 6004(h)**

35. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtors' current liquidity and worsening financial condition make it imperative that the Debtors begin working toward a new transaction immediately. Accordingly, to allow the Debtors to promptly negotiate and pursue a transaction with Hudson, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h).

**NOTICE**

36. Notice of this Motion has been provided to (a) counsel for the U.S. Trustee; (b) counsel for the Committee; (c) counsel for Hudson; (d) counsel for Hildene; and (e) all parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request the entry of an order, substantially in the form attached as **Exhibit A**, granting the following relief: (i) approving the proposed form of the Exclusivity Letter; (ii) authorizing the Debtors to execute and perform under the Exclusivity Letter, and to make the immediate payment by the Debtors to HSCM Bermuda Fund Ltd., an affiliate of Hudson, of the Expense Reimbursement Amount of $1,250,000 under Section 8.3 of the Stalking Horse SPA; and (iii) granting related relief.

Dated: February 22, 2019
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Paige N. Topper*

Eric D. Schwartz (No. 3134)
Gregory W. Werkheiser (No. 3553)
Matthew B. Harvey (No. 5186)
Paige N. Topper (No. 6470)
1201 N. Market St., 16th Floor
PO Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
eschwartz@mnat.com
gwerkheiser@mnat.com
mharvey@mnat.com
ptopper@mnat.com

– and –

Peter Ivanick
Lynn W. Holbert
John D. Beck
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
peter.ivanick@hoganlovells.com
lynn.holbert@hoganlovells.com
john.beck@hoganlovells.com

*Counsel for Debtors and Debtors in Possession*