**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SCOTTISH HOLDINGS, INC., et al.,[1]<br>                Debtors. | Chapter 11<br><br>Case No. 18-10160 (LSS)<br>(Jointly Administered)<br><br>**Objection Deadline: 4/10/19 4:00 p.m. (ET)**<br>**Hearing Date: 4/17/19 11:00 a.m. (ET)** |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER CONVERTING THE DEBTORS' CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

      The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, hereby submits this motion (the "Motion") for entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code"). In support of this Motion, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

      1.      These cases have been pending for more than a year. In August 2018, following a marketing and auction process, the Debtors secured confirmation of the *Third Amended Chapter 11 Plan of Reorganization of Scottish Holdings, Inc., and Scottish Annuity & Life Insurance Company (Cayman) Ltd.* (D.I. 437, Ex. A) ("Plan"), which was premised on a sale of Scottish Annuity & Life Insurance Company (Cayman) Ltd. ("SALIC") to Hildene Re Holdings, LLC ("Hildene"), an affiliate of Hildene Opportunities Master Fund, Ltd., a large

---

[1] Debtors, along with the last four digits of their federal tax identification numbers, are as follows: Scottish Holdings, Inc. (4408) and Scottish Annuity & Life Insurance Company (Cayman) Ltd. (3285). Debtors' mailing address for purposes of these chapter 11 cases is 14120 Ballantyne Corporate Place, Suite 300, Charlotte, NC 28277.

#52499568 v7

holder of unsecured debt in this case and a former member of the Committee. The Committee supported confirmation of that Plan, which would have provided a projected recovery to general unsecured creditors of 6.0 to 8.0%. Unfortunately, the Plan could not be consummated, and on February 16, 2019 the Debtors notified Hildene that they were terminating that transaction. Almost immediately, the Debtors entered into that certain letter agreement (the "Exclusivity Letter") between SALIC and Hudson Structured Capital Management Ltd. ("HSCM") and consented to by the original stalking horse bidder HSCM Bermuda Fund Ltd. ("HSCM Bermuda" and collectively with HSCM, "Hudson"), in an effort to determine whether a viable alternate transaction could be negotiated on the timeframe required by the precarious liquidity situation faced by the Debtors. The Exclusivity Letter terminated on March 13, 2019 without an offer acceptable to the Debtors and the Committee having been negotiated. Meanwhile, the Debtors' insurance subsidiary, Scottish Re (U.S.), Inc. ("SRUS") has continued to struggle, and the Insurance Commissioner of the State of Delaware (the "Insurance Commissioner") petitioned to placed SRUS into rehabilitation on March 1, 2019.

2.   The Debtors' estates are suffering continuing losses and diminution of the value of their estates. SALIC's cash and cash equivalents continues to dwindle, falling from approximately $17.9 million on the Petition Date to less than $3.1 now, and other liabilities continue to accrue, including potential inter-company liabilities. Under these circumstances, with no viable alternative to the lapsed Plan in prospect, there is cause for conversion and conversion is in the best interests of creditors of these estates.

**JURISDICTION**

3.   This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtors' chapter 11 cases and this Motion in this district is

#52499568 v7

proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicate for the relief requested herein is Bankruptcy Code section 1112(b).

## BACKGROUND

4.     On January 28, 2018 (the "Petition Date"), each of the Debtors filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5.     On February 20, 2018, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to Bankruptcy Code section 1102(a) (D.I. 81).  No trustee or examiner has been requested or appointed in these chapter 11 cases.

6.     At an auction held on May 30, 2018, Hildene was declared the winning bidder.  On June 11, 2018, the Debtors filed a fully executed version of that certain Stock Purchase Agreement by and among SALIC, Scottish Holdings, Inc. ("SHI") and Hildene (D.I. 342) (the "Hildene SPA").  On June 12, 2018, the Court entered its *Order (I) Approving Debtors' Designation of (A) Winning Bid and Winning Bidder and (b) Backup Bid and Backup Bidder; and (II) Granting Related Relief* (D.I. 346) (the "Winning Bidder Order"), pursuant to which the Court designated Hildene as the Winning Bidder and its bid as the Winning Bid.

7.     The Winning Bidder Order also designated Hudson as the Backup Bidder (as that term is defined in the Winning Bidder Order) and the bid reflected in that certain Stock Purchase Agreement, by and among SHI and Hudson, dated January 28, 2018 (the "Stalking

Horse SPA") as the Backup Bid (as that term is defined in the Winning Bidder Order).  On August 20, 2018, Hudson terminated the Stalking Horse SPA.

8. On August 9, 2018, the Debtors filed the Plan.  On August 27, 2018, the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Third Amended Joint Chapter 11 Plan of Reorganization of Scottish Holdings, Inc., and Scottish Annuity & Life Insurance Company (Cayman) Ltd.* (D.I. 492) (the "Confirmation Order"), confirming the Plan.  Closing of the Hildene SPA is a condition to the Effective Date of the Plan.  *Plan*, Sec. 6.1(a).  The Effective Date of the Plan did not occur.

9. The Hildene SPA contained an Outside Closing Date (as defined in the Hildene SPA) of 180 days after the entry of the Winning Bidder Order (i.e., an Outside Closing Date of December 9, 2019), subject to extension by Purchaser for 60 days (i.e., until February 7, 2019), in accordance with the conditions and limitations set forth in the Hildene SPA.  Hildene SPA, § 8.1(b)(i).  The Hildene SPA was subject to termination by either the Debtors or Hildene upon occurrence of the Outside Closing Date.  *Id.*

10. After months of extensive, good faith efforts to bring the transactions contemplated by the Plan to fruition, it became clear that the transaction was not going to close, and on February 16, 2019 the Debtors terminated the Hildene SPA.  Because closing of the Hildene SPA is a condition to the Effective Date of the Plan, the confirmed Plan cannot go effective.[2]  As noted above, Hudson previously terminated the Stalking Horse SPA, so there is no Backup Bidder in place.

---

[2] On May 25, 2018, the Debtors filed a motion to extend their exclusive periods for filing a plan and soliciting acceptances beyond the statutory 120-day period.  Subsequently, the parties agreed to, and the Court approved, a series of extensions of the exclusive periods.  The Debtors' most recent motion to extend the exclusive periods has been continued by agreement of the Debtors and the Committee to the next omnibus hearing date in these cases, resulting in a bridge extension of the exclusivity periods through at least that hearing date.

11. On February 28, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 105(a) and 363 (I) Approving Exclusivity Letter with Hudson Structured Capital Management Ltd., (II) Authorizing the Debtors to Enter into and Perform Under Such an Exclusivity Letter, and (III) Granting Related Relief* (D.I. 707) (the "Exclusivity Order"), pursuant to which the Court approved the Exclusivity Letter.

12. Shortly after termination of the Hildene SPA, the Debtors entered into the Exclusivity Letter with Hudson, with the consent of the Committee, to determine whether a beneficial alternative transaction with Hudson could be negotiated. Although an unacceptable offer was proffered by Hudson pursuant to that letter, the Committee made a counter-offer and Hudson declined to substantively respond to that counteroffer. As Hudson proposed no offer acceptable to the Debtors and the Committee, the Exclusivity Letter terminated on March 13, 2019.

13. While the parties struggled to bring the Plan to fruition, the Debtors' domestic reinsurance subsidiary, SRUS, continued to suffer losses. With no clear ability on the part of SALIC to continue to fund those losses, on March 1, 2019 the Insurance Commissioner filed a Verified Petition for Entry of Rehabilitation and Injunction Order in the Court of Chancery of the State of Delaware seeking to commence rehabilitation proceedings with respect to SRUS. On March 6, 2019, the Court of Chancery entered a Rehabilitation and Injunction Order granting that petition.

14. Similarly, the financial condition of the Debtors themselves has continued to deteriorate. The Debtors' cash and cash equivalent reserves have diminished materially over the past year, from approximately $17.9 million as of the Petition Date to less than $3.1 million currently, and soon will be completely exhausted. As a result, the prospects for a successful plan

of reorganization have substantially lessened and the likelihood of a liquidation of the Debtors has materially increased.

## RELIEF REQUESTED

15. By this Motion, the Committee seeks the entry of an order converting these cases to cases under chapter 7, for cause. The Committee further requests that the Court vacate its Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals [D.I. 89] (the "Interim Compensation Order") with respect to the unpaid portion of any pending Monthly Fee Applications or Interim Fee Application Requests, both as defined in the Interim Compensation Order.

## BASIS FOR RELIEF

### A. There is No Reasonable Likelihood of Rehabilitation.

16. Cause exists to convert the Debtor's chapter 11 case to one under chapter 7, pursuant to Bankruptcy Code section 1112(b).

17. Bankruptcy Code section 1112(b) provides:

(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

(4) For purposes of this subsection, the term "cause" includes—

(A) substantial or continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation…

18. Section 1112(b)(2) provides (emphasis added).:

The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of

creditors and the estate, and the debtor or any other party in interest establishes that—

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor **other than under paragraph (4)(A)**—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

19. Accordingly, a Court **must** convert the case if (i) the Court determines that cause exists; (ii) the Court does not determine the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (iii) the requirements of Bankruptcy Code section 1112(b)(2) have not been satisfied.  *See* 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed); *In re Riverbend Cmty., LLC*, 2012 Bankr. LEXIS 1275, at *9 n.6  (Bankr. D. Del. Mar. 23, 2012) ("Congressional intent that 'shall' really does mean 'must' in the convert or dismiss provision is readily apparent.  In 2005, Congress removed the word 'may' from Section 1112(b) and substituted 'shall' if a moving party establishes 'cause.'  Congress clearly intended to make conversion or dismissal mandatory upon proof of 'cause'") (internal citations to BAPCPA omitted); 7 Collier on Bankruptcy ¶1112.04[4] (16th ed.)) ("If one of the enumerated examples of cause set forth in section 1112(b)(4) is proven by the movant by a preponderance of the evidence, the court must find that movant has established cause").

20. The Bankruptcy Code provides for conversion or dismissal of a chapter 11 case based on continuing loss to or diminution of the estate in order to prevent the debtor-in-

-7-

possession "from gambling on an enterprise at the creditors' expense when there is no hope of rehabilitation." *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995); *see also*. *In re The Reserves Resort, Spa & Country Club LLC*, Bankr. D. Del Case No. 12-13316-KG (Memorandum Opinion dated July 12, 2013). Although section 1112(b)(4)(A) appears to require both loss to or diminution of the estate *and* the absence of a reasonable likelihood of rehabilitation, "[f]undamental bankruptcy policy continues to support the proposition that the inability to propose a feasible reorganization or liquidation plan provides 'cause' for dismissal or conversion of a chapter 11 case on request of an interested party. … [T]he inability to effectuate a plan, by itself, provides cause for dismissal or conversion of a chapter 11 case." *In re DCNC N.C. I, LLC*, 407 B.R. 651 (Bankr. E.D. Pa. 2009). In all events, both prongs of section 1112(b)(4)(A) are satisfied here.

21.   The Debtors have no reasonable likelihood of rehabilitation. "Rehabilitation does not include liquidation. Rehabilitation means to reestablish a business." *In re 15375 Memorial Corp.*, 386 B.R. 548, 552 (Bankr. D. Del. 2008) (reversed on other grounds by *In re 15375 Memorial Corp.*, 400 B.R. 420 (D. Del. 2009)); *see also Loop Corp. v. United States Trustee (In re Loop Corp.)*, 379 F.3d 511, 516 (8th Cir. 2004) ("Courts have consistently understood 'rehabilitation' to refer to the debtor's ability to restore the viability of its business."); *In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. 707, 714-15 (Bankr. D. Md. 2011) (determination is whether a debtor has "sufficient business prospects."); 7 COLLIER ON BANKRUPTCY ¶ 1112.04[6][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed). The Debtors have no reasonable likelihood of rehabilitation or of consummating a confirmable reorganization plan. Cause for conversion can be based on that factor alone.

-8-

22. In addition, the Debtors' estates are continuing to suffer material losses and diminution of value. Meanwhile, professional fees continue to accrue, as do potential inter-company liabilities to SRUS. As noted by the Eighth Circuit, "any negative cash flow— including that resulting only from administrative expenses— effectively comes straight from the pockets of creditors." *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004); *see also In re FRGR Managing Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009) ("As to the first prong, it is apparent [debtor's] actions are causing a diminution to the estate. FRGR continues to incur quarterly U.S. Trustee fees as well as legal fees, causing continuing loss to the estate"); *In re Brutsche*, 476 B.R. 298, 305 (Bankr. D. N.M. 2012) ("professional services come at a cost, obviously, which cost needs to be factored in the calculation of gains and losses for the estate. And the hard fact is that these costs are rapidly mounting expenses for the estate that help put the estate in the position of continuing substantial losses").

23. A debtor may not enjoy the protection of chapter 11 indefinitely. "[I]t is not the purpose of Chapter 11 to allow a debtor a permanent cloak of protection while the estate's assets continue to diminish and the operational coherence unravels. The function of Chapter 11 is rehabilitation—not disintegration." *In re Galvin*, 49 B.R. 665, 669 (Bankr. D.N.D. 1985).

24. For these reasons, cause exists under section 1112(b)(4)(A) to convert these cases to cases under chapter 7.

B. **Conversion to Chapter 7 Is in the Best Interest of Creditors.**

25. Once the movant establishes cause, section 1112(b) mandates that the Court convert or dismiss the case unless it identifies unusual circumstances establishing that the requested conversion is not in the best interests of creditors and the estate. This standard

-9-

#52499568 v7

requires a showing by the debtor or other party in interest that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time. 11 U.S.C. § 1112(b)(2)(A).

26. The Debtors have had ample time to try to consummate the Plan confirmed in these cases last August. While the Debtors, their management and professionals expended considerable efforts in good faith to try to realize that goal, it is now apparent that the Plan will never become effective and conversion is therefore in the best interest of creditors and the estates. Courts consider the preferences expressed by the creditors themselves in determining what is in their best interests, and here the Committee, as a fiduciary for unsecured creditors of these estates, has determined that conversion is in the best interests of creditors. *See, e.g., In re Camden Ordnance Mfg. Co. of Ark., Inc.*, 245 B.R. 794, 802 (E.D. Pa. 2000) (approving creditors' request to convert case and noting that "creditors are the best judge of their own best interests").

27. Therefore, there exist no unusual circumstances to prevent the conversion of these cases, because there is no likelihood at all that a plan will be consummated within a reasonable time.

## NOTICE AND PRIOR MOTIONS

28. Notice of this Motion has been given to (a) the U.S. Trustee for the District of Delaware, (b) the Debtors, and (c) all parties who have requested notices pursuant to Federal Rule of Bankruptcy Procedure Rule 2002. In light of the nature of the relief requested herein, the Committee submits that no other or further notice of hearing is required.

29. No previous request for the relief sought herein has been made to this Court or any other court.

-11-

## CONCLUSION

WHEREFORE, the Committee requests that that the Court enter an order converting these cases to cases under chapter 7 of the Bankruptcy Code and granting the Committee such other relief as the Court deems just and proper.


Dated: March 27, 2019

Respectfully submitted,

PEPPER HAMILTON LLP

By: */s/ David M. Fournier*
David M. Fournier (DE No. 2812)
John H. Schanne II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware 19801
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
fournierd@pepperlaw.com
schannej@pepperlaw.com

-and-

PEPPER HAMILTON LLP
H. Peter Haveles, Jr.
620 Eighth Avenue, 37th Floor
New York, NY 10018-1405
Phone: (212) 808-2700
Facsimile: (212) 286-9806
havelesp@pepperlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

#52499568 v7